## DENNIS *v.* HAMILTON.

PROBATE COURT; POWER; ADMINISTRATORS.

The probate court, in the exercise of its general supervisory power over the administration of decedents' estates, may appoint a successor to a deceased coadministrator, against the objection of a surviving administrator, who is not related by blood to the decedent, and is not one of those upon whom the right of administration is conferred by statute. (Distinguishing *Williams* v. *Williams*, 24 App. D. C. 214.)

No. 3149. Submitted October 7, 1918. Decided November 4, 1918.

HEARING on an appeal from an order of the Supreme Court of the District of Columbia, holding a probate court, appointing a coadministrator to fill a vacancy caused by the death of one of two administrators of an estate. *Affirmed.*

The COURT in the opinion stated the facts as follows:

Under an order of the supreme court of the District of Columbia holding a probate court denying probate to the last

will and testament of one Sarah Catherine Borrows, letters of administration were granted to Edmund Borrows Briggs, a first cousin of the deceased, and appellant, William Henry Dennis, who was not related to decedent, but who had represented her for a number of years as guardian *ad litem* and as committee in lunacy for her person and estate.

A petition was filed by certain of the heirs-at-law of the decedent, praying that the original administrators be displaced by the appointment of a trust company. While the petition was pending, the administrator Briggs died, leaving appellant Dennis as surviving administrator. On final hearing, appellee Fenning was appointed coadministrator with appellant to fill the vacancy caused by the death of Briggs. From the order appointing Fenning and designating appellee Hamilton to defend a suit pending against the estate, this appeal was taken.

*Mr. Harry F. Kennedy,* for appellant:

"In England, by the Stat. 21 Hen. VIII. chap. 5, sec. 3, the ordinary is directed to grant administration 'to the widow or the next of kin or to both' at his discretion. Under that provision of the statute, it has been the uniform construction and practice of the ecclesiastical court and of the present probate court, to prefer a sole to a joint administration; and those courts have, as a general rule, refused to force a joint administration upon a party entitled to letters, against his or her consent. 1 Wms. on Exrs. 341; *Re Browning's Goods,* 2 Swab. & T. 634; *Bell* v. *Timiswood,* 2 Phill. 22; *Dampier* v. *Colson,* 2 Phill. 52; *Re Goods of Newbold,* L. R. 1 Prob. & Div. 285. As said by the court in the case of *Bell* v. *Timiswood,* just referred to, 'the court never forces a joint administration, and for an obvious reason,—because it is necessary for the administrators to join in every act; and there might be a complete contrariety of action, and it would be in the power of one of them to defeat the whole administration.'

"In those States where statutes of a similar character to those in force in Maryland and the District of Columbia upon

this subject exist, the same practice as that which prevails in England has been pursued. *Cook* v. *Carr,* 19 Md. 1; *Carpenter* v. *Jones,* 44 Md. 625; *McGooch* v. *McGooch,* 4 Mass. 348; *Gygers's Estate,* 65 Pa. 315; *State* v. *Collier,* 62 Mo. App. 38; *Williams* v. *Williams,* 24 App. D. C. 214.

"Such a thing was never heard of as a court forcing upon a party entitled a joint administration against his consent." *Peters* v. *Public Administrator,* 1 Bradf. 200; *Newbold's Goods,* L. R. 1 Prob. & Div. 285.

The multiplication of offices in a trust estate is not favored by the courts: "There is no such office or position known to the law as 'attorney of an estate.' When an attorney is employed to render services in procuring the admission of a will to probate, or in settling the estate, he acts as the attorney of the executor, and not of the estate, and for his services the executor is personally responsible. Every executor or administrator is chargeable in his account with the whole of the estate of the decedent which may come into his possession, and while in the settlement of his account he will be allowed all necessary expenses in the care, management, and settlement of the estate, including reasonable fees paid to attorneys for conducting the necessary proceedings or suits in court; still, such allowance can be made only to him, and not to the attorney; and if the attorney employed should be derelict in his duty, and should receive and misappropriate funds of the estate, the executor would be liable therefor to the legatees under the will. This being so, it would seem to be neither reasonable nor right to hold that the executor of a will must necessarily accept the services of an attorney selected by the testator. Our conclusion, therefore, is that the language employed by Mrs. Ogies' 'I hereby select as the attorney of my estate John W. Mitchell, and direct my executor to consult and employ him in all matters pertaining to the distribution of my estate and the requirements of this, my last will,'—did not constitute a selection which was binding on the executrix, but was simply an advisory provision which she could disregard if she chose to do so."

*In re Ogies,* 101 Cal. 381; *Young* v. *Alexander,* 16 La. 108; *Foster* v. *Elsley,* L. R. 19 Ch. Div. 518.

The administrators considered the claim of Marie Murphy a just one, and, if properly established, one to be paid; but they frankly and fairly prayed the court for instructions and were within their rights in declining to plead the Statute of Limitations.

*"Plea of Limitations.* * * * It shall not be considered as the duty of an executor or administrator to avail himself of the act of limitations to bar what he supposes to be a just claim, but the same shall be left to his honesty and discretion." D. C. Code, sec. 341.

The Code specifically sets forth the only methods by which letters of administration may be revoked, and nowhere provides for a partial revocation, such as was virtually attempted by the order of December 7, 1917.

"It shall have full power and authority to take the proof of wills of either personal or real estate and admit the same to probate and record, and for cause to revoke the probate thereof; to grant and, for any of the causes hereinafter mentioned, to revoke letters testamentary, letters of administration, letters *ad colligendum,* and letters of guardianship, and to appoint a successor in the place of anyone whose letters have been revoked." D. C. Code, sec. 119.

Executors or administrators may be removed only upon sufficient and specified cause being shown. D. C. Code, secs. 123, 127, 263, and 296.

"The right of administration is a valuable right, and those upon whom that right has been conferred by statute should not be deprived of it, except as the statute has provided." *Williams* v. *Williams, supra.*

The death of one coadministrator does not make a vacancy nor lessen the rights of the survivor.

"At the common law, when letters of administration are granted to two or more persons, and one or more die, the survivors or survivor might exercise the power of all the original administrators." 11 R. C. L. sec. 494.

"On the decease of one of two executors or administrators, the trust is vested in the survivor, who then has a right to the possession and disbursement of the assets." *Beall* v. *Hilliary,* 1 Md. 186; *Wilson* v. *Snow,* 228 U. S. 217.

"Where the appointment of an administrator is left to the unconditional discretion of the judge, he will be controlled by this consideration in making the selection; but having made it, the appointee can be removed only upon proof of such facts as constitute a breach of the trust, in ascertaining which the judge may be aided by considering whether the conduct or acts complained of render the principal liable on his bond." 1 Woerner, Am. Law of Administration, p. 574.

The petition of Ellen R. Waters *et al.* praying for the removal of William Henry Dennis and Edmund B. Briggs, and the appointment of a trust company as administrator d. b. n., was a renunciation of any right they or anyone claiming under or through them might have had to be appointed administrator d. b. n. *Re Easton,* 23 Wash. L. Rep. 789; *Carpenter* v. *Jones,* 44 Md. 625, 627; *Stockdale* v. *Conway,* 14 Md. 99; *Cole* v. *Dial,* 12 Tex. 100; *Shropshire* v. *Withers,* 5 J. J. Marsh. 210.

At the common law, when letters of administration are granted to two or more persons, and one or more die, the survivors or survivor may exercise the power of all of the original administrators. *Beall* v. *Hilliary,* 1 Md. 186, 54 Am. Dec. 649.

In the case of executors, a distinction is sometimes drawn between powers vested in coexecutors by their own names and powers conferred on them generally as executors. In the latter case the surviving coexecutors possess all of the powers of the original group of executors. *Wilson* v. *Snow,* 228 U. S. 217.

"Such a thing was never heard of as a court forcing upon a party entitled a joint administration against his consent." *Peters* v. *Public Administrator,* 1 Bradf. 207.

"It is very evident from this that the court recognized the impropriety of attempting to create a joint administration against the protest of one of the parties thereto. The nature

of the office forbids it.   Joint administration necessarily involves joint liability, and no one can be compelled to assume such responsibility.   Due regard to individual rights, as well as the interest of the estate, require that administration should not be committed to two or more persons unless they mutually agree to accept the trust.   Nor does the decree in this case require joint administration.   If it did, it would be manifestly wrong; but its effect is to create two separate, co-ordinate administrations on the same estate, and for that reason it is equally objectionable.   Such a thing is unknown to our jurisprudence, even in theory; and in practice it would be entirely impracticable.   Under the English statute, the ordinary may commit the administration to the widow and next of kin jointly, or he may grant to one exclusive administration of a particular portion of the residue; but no warrant for any such practice as that contemplated by the decree of the orphans' court can be found in our statute." *Brubakers' Appeal,* 98 Pa. 21.

The weight of authority clearly points to the fact that a joint administration is never forced, and is not the policy of the law; but the question in this jurisdiction has been effectively and definitely settled.

"The court never forces a joint administration, and for an obvious reason; because it is necessary for the administrators to join in every act; and there might be a complete contrariety of action, and it would be in the power of one of them to defeat the whole administration." *Williams* v. *Williams, supra,* and quoting *Bell* v. *Timiswood,* 2 Phill. 22.

*Mr. John J. Hamilton* and *Mr. Frederick A. Fenning,* for appellees, in their brief cited:

*Carpenter* v. *Jones,* 44 Md. 625; *Crossan* v. *McCrary,* 37 Iowa, 684; Cyc. 18–25; *Guthrie* v. *Welch,* 24 App. D. C. 568; *Reed* v. *Howe,* 13 Iowa, 50; *Williams* v. *Williams,* 24 App. D. C. 214; *Williams* v. *Williams,* 25 App. D. C. 32; Woerner, Am. Law of Administration, par. 171.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

The sole question here presented is one of power in the probate court, over the objection of the surviving administrator, to appoint an administrator to fill a vacancy caused by the death of one of two administrators. Neither of the present administrators are related by blood to the decedent, nor are any of the next of kin who are given preference in administration under the statute making objection to the present order. In this particular, the case differs from *Williams* v. *Williams,* 24 App. D. C. 214.

While it is true, as insisted by appellant, that a surviving administrator, succeeds to all the powers of the original coadministrator, this condition only continues so long as the survivor remains the sole administrator. It ceases with the appointment of a successor. The powers then become, as originally, joint and several.

We are not here concerned with the right of administration by those upon whom the right has been conferred by statute. As suggested, no one has here objected upon whom the statute bestows any right of administration, aside from the powers derived by the present litigants through the discretionary appointment of the probate court. The position of appellant is well described by the Iowa supreme court in *Read* v. *Howe,* 13 Iowa, 50, as follows: "What provision of the statute has been violated by this appointment has not been shown, nor in what the irregularity consists, except the alleged reason that she has no interest whatever in the estate. If that be true, still, from all we can discover in the record, she stands upon an equal footing with Mr. Howe. He claims no precedence as a preferred executor under the statute; and if he does not like the companionship of Mrs. Read in the administration, it is his privilege to throw up his commission and retire."

It is doubtful if appellant has the right to maintain this action, since it is not clearly apparent that he has the status of an injured party. However, we have ignored this question, preferring to turn the case upon the broad ground of the power of

the probate court to make the present order in the exercise of
its general supervisory power over the administration of estates
in general, a power which, in the absence of statutory limita-
tion, will only be reviewed for abuse of discretion, a condition
not present in this case.

The judgment is affirmed, with costs.          *Affirmed.*

A motion for rehearing was denied November 23, **1918.**